CATHERINE J. WEINBERG, ESQ. [SBN 222066]
BUCKNER, ROBINSON & MIRKOVICH
3146 Red Hill Avenue, Suite 200
Costa Mesa, California 92626
Telephone: (714) 432-0990
Fax: (714) 432-0352
Email: cweinberg@bamlaw.net

Attorneys for Defendant
Lakeview Village Corp., a
Nevada corporation

# UNITED STATES DISTRICT COURT

## FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LAKEVIEW VILLAGE CORP., a Nevada corporation; and Does 1-10, inclusive,<br><br>Defendants. | Case No. 8:19-cv-01884-DOC-ADS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS STATE LAW CLAIM**<br><br>FRCP Rules 12(b)(1), 12(b)(6), 12(h)(3), and 28 USC § 1367(c)<br><br>Date: December 9, 2018<br>Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. David O. Carter<br><br>Complaint Filed: 10/01/19<br>Trial Date: No date scheduled |

1

1

# TABLE OF CONTENTS

<u>Section</u>                                                                                         <u>Page</u>

I.      Introduction And Statement Of Facts                                          5

II.     Americans With Disabilities Act And The Unruh Civil Rights Act      6

III.    Legal Authority For Motion And Court's Discretion                        7

        A.      Federal Rule of Civil Procedure 12(b)(1)                          8

        B.      Federal Rule of Civil Procedure 12(b)(6)                          9

        C.      28 U.S.C. § 1367(c)                                               9

IV.     California Has Enacted Specific Laws Regarding Construction-          11
        Related Accessibility Claims By High-Frequency Litigants

V.      Plaintiff Is A "High-Frequency Litigant" Under California Law         13

VI.     Plaintiff Filed The Unruh Claim In This Court To Impermissibly        13
        Go "Forum Shopping" To Evade California's Laws Imposing
        Heightened Pleading Standards And Increased Fees On Case
        Filings By High-Frequency Litigants

VII.    Plaintiff's Unruh Act Claim Predominates Over His ADA Claim          16

VIII.   Conclusion                                                            19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS STATE LAW CLAIM

# TABLE OF AUTHORITIES

<u>CASES</u>                                                          <u>PAGE</u>

*Ashcroft v. Iqbal,*                                                    9
556 U.S. 662 (2009)

*Bell Atlantic Corp. v. Twombly,*                                       9
550 U.S. 544 (2007)

*City of Chicago v. Int'l Coll. Of Surgeons,*                          9, 10
522 U.S. 156 (1997)

*Exec. Software N. Am. Inc. v. U.S. Dist. Court,*                       10
24 F.3d 1545 (9th Cir. 1994)

*Johnson v. Guedoir,*                                                  16
218 F. Supp. 3d 1096 (USDC Cal., E.D. 2016)

*Lentini v. Cal. Center for the Arts, Escondido,*                       6
370 F.3d 837 (9th Cir. 2004)

*Mendiondo v. Centinela Hosp. Med. Ctr.,*                               9
521 F.3d 1097 (9th Cir. 2008).

*Molski v. M.J. Cable, Inc.,*                                           7
481 F.3d 724 (9th Cir. 2007)

*Org. for the Advancement of Minorities with*                          6, 15
*Disabilities v. Brick Oven Rest.,*
406 F. Supp. 2d 1129 (S.D. Cal. 2005)

*Schutza v. Cuddeback,*                                          11, 14-15, 17-18
262 F. Supp. 3d 1025 (S.D. Cal. 2017)

*Sprewell v. Golden State Warriors,*                                    9
266 F.3d 979 (9th Cir. 2001)

*Wander v. Kaus,*                                                       6
304 F.3d 856 (9th Cir. 2002)

*United Mine Workers of America v. Gibbs,*                              9
383 U.S. 715 (1966)

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS STATE LAW CLAIM

| RULES AND STATUTES | PAGE |
|---|---|
| 28 U.S.C. § 1367 | 8, 9, 10, 14, 18 |
| 42 U.S.C. § 12182 | 6 |
| Cal. Civ. Code §51 | 7 |
| Cal. Civ. Code §52 | 7 |
| Cal. Code Civ. Proc. §425.50 | 11-12, 12-13 |
| Cal. Code Civ. Proc. §425.55 | 12, 13 |
| Cal. Gov. Code §70616.5 | 12 |
| Fed. Rule Civ. Proc. 12(b)(1) | 7, 8 |
| Fed. Rule Civ. Proc. 12(b)(6) | 7, 9 |
| Fed. Rule Civ. Proc. 12(h)(3) | 7, 9 |

| SECONDARY RESOURCES | PAGE |
|---|---|
| RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2019) | 8 |

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS STATE LAW CLAIM

## I.    Introduction And Statement Of Facts

Plaintiff JAMES RUTHERFORD ("Plaintiff") filed the underlying complaint (the "Complaint") on or about October 1, 2019, generally alleging (on page 3, paragraph 8 of the Complaint) that over six months previously, in March of 2019, he had traveled to the Bruster's Real Ice Cream store in defendant LAKEVIEW VILLAGE CORP.'s ("Defendant") Harbor Town & Country Shopping Center (the "Shopping Center") in Garden Grove, California, "for the dual purpose of purchasing a chocolate shake and to confirm that this public place of accommodation is accessible to persons with disabilities within the meaning federal and state law *(sic)*."

Plaintiff complains (Complaint page 3, paragraph 11) that "there were no designated parking spaces available", but fails to state if that condition simply arose because other people with handicap placards were using all of the designated parking spaces in the Shopping Center at the moment that Plaintiff arrived. It is unclear whether or not a condition of all of the designated handicap parking spaces being occupied at the moment Plaintiff arrived is the main grievance underlying the Complaint. Nowhere in the Complaint does Plaintiff allege that the number of designated handicap parking spaces provided at the Shopping Center is inadequate.

In paragraph 12 (pages 3-4) of the Complaint, Plaintiff sets forth a list of almost half a dozen technical issues that he generally alleges exist at the Shopping Center. At paragraph 16 (on page 4 of the Complaint), Plaintiff vaguely alleges that he "personally encountered these barriers", but he does not state whether or not such "barriers" prevented him from obtaining the desired chocolate shake.

In paragraph 24 (pages 5-6) of the Complaint, Plaintiff puts Defendant "on notice" that he intends to conduct a "site inspection" to discover "other violations and barriers" that Plaintiff alleges (on information and belief) exist at the Shopping Center.

Based on these allegations, Plaintiff seeks injunctive relief under the Americans With Disabilities Act of 1990 ("ADA"), statutory damages of $4,000.00 per violation pursuant to the California Unruh Civil Rights Act, and an additional $4,000.00 per violation under the Unruh Act as "deterrence damages", and attorney's fees and costs. Complaint, page 9, lines 1-7 (Prayer).

## II.     Americans With Disabilities Act And The Unruh Civil Rights Act

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Under the ADA, "damages are not recoverable . . . only injunctive relief is available." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(l)).

Under the Unruh Act, a plaintiff is generally required to allege and prove that the defendant performed an intentional act or omission. See *Org. for the Advancement of Minorities v. Brick Oven Rest.,* 406 F. Supp. 2d 1120, 1129 (S.D. Cal. 2005). However, the ADA does not require a plaintiff to show intentional discrimination if a plaintiff's "Unruh Act violation is premised on an ADA violation." *Lentini v. Cal. Center for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004). In the Unruh Act violation allegations in the Complaint (page 8 lines 1-

6

19) Plaintiff fails to allege any intentional act by Defendant.

The Unruh Act provides: "All persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act also provides that a violation of the ADA constitutes a violation of § 51 of the Unruh Act. Cal. Civ. Code § 51(f).

Unlike the ADA, the Unruh Act allows for recovery of monetary damages. A plaintiff may recover actual damages for each and every offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." Cal. Civ. Code § 52(a). "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

## III.    Legal Authority For Motion And Court's Discretion

Federal *Rules of Civil Procedure* Rule 12 states, in pertinent part:

"(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

"(1) lack of subject-matter jurisdiction;  . . .

"(6) failure to state a claim upon which relief can be granted;  . . ."

"(h) Waiving and Preserving Certain Defenses.  . . .

"(3) Lack of Subject-Matter Jurisdiction. If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

7

28 United States Code § 1367 ("Supplemental Jurisdiction") states, in pertinent part:

> "(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  . . .
>
> "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -
> "(1) the claim raises a novel or complex issue of State law,
> "(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> "(3) the district court has dismissed all claims over which it has original jurisdiction, or
> "(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

## A.     Federal Rule of Civil Procedure 12(b)(1)

F.R.C.P. Rule 12(b)(1) authorizes motions to dismiss based upon lack of subject matter jurisdiction.

"Burden of proof on motion: Although defendant is usually the moving party on a Rule 12(b)(1) motion, *plaintiff* is the party who invoked the court's jurisdiction (except in removal cases, *see* ¶ 9:77.15). Accordingly, plaintiff bears the burden of establishing federal subject matter jurisdiction. In effect, the court presumes *lack* of jurisdiction until plaintiff proves otherwise. [*Kokkonen v. Guardian Life Ins. Co. of America* (1994) 511 US 375, 376-378,114 S.Ct 1673, 1675; *In re Wilshire Courtyard* (9th Cir. 2013) 729 F3d 1279, 1284; *United States ex rel. Eitel v. Reagan* (D OR 1995) 898 F.Supp. 734, 737 (quoting text)]" Phillips & Stevenson, RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2019) ¶ 9.77.10 (Italics in original.)

8

1   "If the court determines at any time that it lacks subject-matter jurisdiction,

2   the court must dismiss the action." F.R.C.P. 12(h).

3   **B.      Federal Rule of Civil Procedure 12(b)(6)**

4   A motion to dismiss pursuant to Rule 12(b)(6) must be granted when "the

5   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

6

7   legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th

8   Cir. 2008). A complaint does not suffice if it relies solely on "naked assertions

9   devoid of further factual enhancement." See *Ashcroft v. Iqbal*, 556 U.S. 662, 678

10  (2009). Rather, it must contain sufficient facts to "state a claim to relief that is

11  plausible on its face." *Id.*

12

13  While a court must assume the veracity of "well-pleaded factual

14  allegations," a court is not "required to accept as true allegations that are merely

15  conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*

16  *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

17  A pleading that offers "labels and conclusions" or "a formulaic recitation of

18  the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550

19  U.S. 544, 545 (2007).

20

21  **C.      28 U.S.C. § 1367(c)**

22  The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of

23  the principles of "economy, convenience, fairness, and comity" that underlie the

24  Supreme Court's earlier jurisprudence concerning pendent jurisdiction. *City of*

25  *Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 172–73 (1997) (quoting

26  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)); see also *United Mine*

27  *Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized

28

9

that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago*, 522 U.S. at 173. The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Cohill*, 484 U.S. at 350).

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-(3), *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances." *Exec. Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994). According to the

10

1   Ninth Circuit, this "inquiry is not particularly burdensome." *Id.* When declining to

2   exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), "the court must

3   identify the predicate that triggers the applicability of the category (the exceptional

4   circumstances), and then determine whether, in its judgment, the underlying *Gibbs*

5   values are best served by declining jurisdiction in the particular case (the

6   compelling reasons)." *Id.*

7

8   **IV.     California Has Enacted Specific Laws Regarding Construction-Related**

9          **Accessibility Claims By High-Frequency Litigants**

10          "In 2012, California adopted heightened pleading requirements for disability

11   discrimination lawsuits under the Unruh Act, including provisions requiring high-

12   frequency litigants to verify and specify their allegations. See Cal. Code Civ. Proc.

13   § 425.50. The purpose of these heightened pleading requirements is to deter

14   baseless claims and vexatious litigation. See e.g., SB 1186, Chapter 383 § 24 (Ca.

15

16   2012)." *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1030-1031 (S.D. Cal. 2017)

17          These heightened pleading requirements apply to actions alleging a

18   "construction-related accessibility claim," which California law defines as "any

19   civil claim in a civil action with respect to a place of public accommodation,

20   including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55,

21   based wholly or in part on an alleged violation of any construction-related

22   accessibility standard." Cal. <u>Civil Code</u> § 55.52(a)(1).

23

24          California's heightened pleading standard for construction-related

25   accessibility claims require a plaintiff to include specific facts concerning the

26   plaintiff's claim, including the specific barriers encountered or how the plaintiff

27   was deterred and each date on which the plaintiff encountered each barrier or was

28

11

1  deterred. See C.C.P. § 425.50(a).

2  California law further requires plaintiffs to verify their complaints alleging

3  construction-related accessibility claims. See C.C.P. § 425.50(b)(1). A complaint

4  alleging construction-related accessibility claims that is not verified is subject to a

5  motion to strike. *Id.*

6

7  When California continued to experience large numbers of these actions,

8  California imposed additional limitations on "high-frequency litigants." These

9  additional restrictions became effective on October 15, 2015.

10  In support of its imposition of additional requirements on high-frequency

11  litigants, the California Legislature found and declared:

12

13  "According to information from the California Commission on
   Disability Access, more than one-half, or 54 percent, of all

14  construction-related accessibility complaints filed between 2012 and
   2014 were filed by two law firms. Forty-six percent of all complaints

15  were filed by a total of 14 parties. Therefore, a very small number of
   plaintiffs have filed a disproportionately large number of the

16  construction-related accessibility claims in the state, from 70 to 300
   lawsuits each year. Moreover, these lawsuits are frequently filed

17  against small businesses on the basis of boilerplate complaints,
   apparently seeking quick cash settlements rather than correction of the

18  accessibility violation. This practice unfairly taints the reputation of
   other innocent disabled consumers who are merely trying to go about

19  their daily lives accessing public accommodations as they are entitled
   to have full and equal access under the state's Unruh Civil Rights Act

20  (Section 51 of the Civil Code) and the federal Americans with
   Disability Act of 1990 (Public Law 101-336)." C.C.P. § 425.55(a)(2).

21

22  In response to these "special and unique circumstances," C.C.P. § 425.55(3),

23  California imposed a "high-frequency litigant fee" requiring high-frequency

24  litigants to pay a $1,000 filing fee at the time of the filing of the initial complaint in

25  addition to the standard filing fees. Cal. Government Code § 70616.5. California

26  law also requires complaints filed by high-frequency litigants to allege certain

27

28

12

additional facts, including whether the action is filed by, or on behalf of, a high-frequency litigant, the number of construction-related accessibility claims filed by the high-frequency litigant in the preceding 12 months, the high-frequency litigant plaintiff's reason for being in the geographic area of the defendant's business, and the reason why the high-frequency litigant plaintiff desired to access the defendant's business. See C.C.P. § 425.50(a)(4)(A).

As noted above, the Unruh Act also requires plaintiffs to allege and prove intent, which the ADA does not do.

## V.   Plaintiff Is A "High-Frequency Litigant" Under California Law

Under California law, a "high-frequency litigant" is defined as: "A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation." C.C.P. § 425.55(b)(1). The definition of high-frequency litigant also extends to attorneys. See C.C.P. § 425.55(b)(2).

As shown by the concurrently filed Request for Judicial Notice and the exhibit thereto, from 10/1/2018 to 9/30/2019 Plaintiff filed 108 cases in the Central District and another 41 cases in the Southern District. Most of the cases are almost identical to the instant matter. Plaintiff is clearly a "high-frequency litigant".

## VI.   Plaintiff Filed The Unruh Claim In This Court To Impermissibly Go "Forum Shopping" To Evade California's Laws Imposing Heightened Pleading Standards And Increased Fees On Case Filings By High-Frequency Litigants

By enacting restrictions on the filing of construction-related accessibility

1   claims, California has expressed a desire to limit the financial burdens California's

2   businesses may face for claims for statutory damages under the Unruh Act.

3        **By filing his California Unruh Act claim in federal court, Plaintiff is**

4   **attempting to obtain state law damages in a manner inconsistent with the state**

5   **law's requirements.**

6

7        This situation, and the burden the ever-increasing number of such cases

8   poses to the federal courts, presents "exceptional circumstances" and "compelling

9   reasons" that justify the Court's discretion to decline to exercise supplemental

10  jurisdiction over Plaintiff's Unruh Act claim in this action under 28 U.S.C. §

11  1367(c)(4).

12

13       A district court's determination to decline to exercise supplemental

14  jurisdiction over Plaintiff's Unruh Act claim in these circumstances supports the

15  values of judicial economy, convenience, fairness, and comity:

16       "The Court notes that Plaintiff [] has filed over one hundred cases in
         this and other courts alleging disability discrimination. As a high-
17       frequency litigant primarily seeking relief under state law, the Court
         finds it would be improper to allow Plaintiff to use federal court as an
18       end-around to California's pleading requirements. Therefore, as a
         matter of comity, and in deference to California's substantial interest
19       in discouraging unverified disability discrimination claims, the Court
         declines supplemental jurisdiction over Plaintiff's Unruh Act claim.
20       See *Cross v. Pac. Coast Plaza Invs., L.P.* , No. 06 CV 2543 JM RBB,
         2007 WL 951772, at *5 (S.D. Cal. Mar. 6, 2007) (declining to
21       exercise supplemental jurisdiction over plaintiff's Unruh Act claims in
         the interest of comity and noting this interest has become more
22       compelling 'as the courts struggle to resolve what is at the moment an
         irreconcilable tension between the ADA and the Unruh Act');
23       *Hitching Post I Rest.* , 2005 WL 3952248 at *8–9 (finding comity to
         be a compelling reason for declining supplemental jurisdiction over
24       state claims on the ground that California courts should have the
         ability to interpret state disability laws). . . .
25

26       "Finally, and relatedly, the Court agrees with Defendants' contention
         that Plaintiff is engaging in forum-shopping by bringing his action in
27
28
                                               14

federal court and attempting to avoid California's heightened pleading requirements for disability discrimination claims. It is unclear what advantage — other than avoiding state-imposed pleading requirements — Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act. Federal courts may properly take measures to discourage forum-shopping, see, e.g. , *Hanna v. Plumer*, 380 U.S. 460, 467–68, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), and here, where Plaintiff has filed over one hundred disability discrimination cases, and settled more than fifty of them in a two-year period, the Court finds this to be a compelling reason to decline supplemental jurisdiction. See, e.g. , *Brick Oven Rest.* , 406 F.Supp.2d at 1132 (**'Because a legitimate function of the federal courts is to discourage forum shopping and California courts should interpret California law ... compelling reasons exist to decline supplemental jurisdiction over plaintiff's state law claims.')."** *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017); see also *Gibbs*, 383 U.S. at 726. (Emphasis added.)

As the Court concluded in the analogous case of *Organization for Advancement of Minorities with Disabilities v. Brick Oven Restaurant*, 406 F. Supp. 2d 1120 (S.D. Cal. 2005), Plaintiff's actions constitute definitive forum-shopping that should be discouraged by the Court:

"Section 1367(c)(4) allows a district court to refuse to exercise supplemental jurisdiction over state law claims if 'in exceptional circumstances, there are other compelling reasons for declining jurisdiction.' 28 U.S.C. § 1367(c)(4). [If] not specifically raised by defendants, a court may raise this issue *sua sponte*. Of the 178 ADA cases [Plaintiff] has filed in the Southern District of California, not one has ever been decided on the merits. [Plaintiff]'s approach is identical to that of a vexatious litigant in the Central District of California: 'sue, settle, and move on to the next suit.' *Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 866 (C.D. Cal. 2004). It is unclear what advantage [Plaintiff] gains by being in federal court. His sole remedy under the ADA, injunctive relief, is also available under the Unruh Act and the California DPA. **As far as the Court can tell, [Plaintiff]'s sole purpose for attaching an ADA claim is to get his state claims into federal court. This is forum-shopping plain and simple, and discouraging forum-shopping is a legitimate goal for the federal courts.** *Hannah v. Plumer*, 380 U.S. 37, 43-54 (1965). Serious questions of forum shopping necessarily arise '[t]o the extent that the federal claim is used as a bootstrap, merely to facilitate the choice of a federal forum over the pendent state claim.' *Hamilton*

15

*v. Roth*, 624 F.2d 1204, 1212 (3d Cir. 1980)." 406 F. Supp. 2d at 1131 (Emphasis added.)

As Plaintiff is "a high-frequency litigant primarily seeking relief under state law", the Court should find it would be improper to allow Plaintiff to "use federal court as an end-around to California's pleading requirements", and as a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims, the Court should decline supplemental jurisdiction over Plaintiff's Unruh Act claim and dismiss that claim from the Complaint.

## VII.   Plaintiff's Unruh Act Claim Predominates Over His ADA Claim

In the Prayer on pages 8-9 of the Complaint, Plaintiff seeks an order by the Court for relief and damages as follows:

1)   A preliminary and permanent injunction enjoining Defendant from "further violations of the ADA";

2)   Damages of "not less than $4,000 per violation" pursuant to the Unruh Act;

3)   An "additional aware of $4,000 as deterrence damages for each violation"; and

4)   For attorneys' fees, expenses and costs.

Plaintiff does not request an order to alter Defendant's facilities to make such facilities readily accessible to and usable by individuals with disabilities.

In the Complaint, Plaintiff cites to *Johnson v. Guedoir*, 218 F. Supp. 3d 1096 (USDC Cal., E.D. 2016) for the notion that he can collect $8,000 per violation instead of the $4,000 per violation listed in the Unruh Act. That case does

16

not support Plaintiff's overreaching demand. The plaintiff in *Johnson* provided sworn statements to the court stating he actually traveled to the subject store twice, but was never able to enter the store due to a complete lack of handicap parking spaces, the presence of curbs and stairs instead of wheelchair ramps, closed front and rear doors requiring manual operation, and furniture blocking the paths of travel within the store (visible from outside). The plaintiff was awarded $4,000 by the *Johnson* Court for each attempted visit.

Here, Plaintiff's true object is clearly the money, as evidenced by his prayer, wherein most of his demands seek monetary damages pursuant to the Unruh Act. His Unruh Act claim openly predominates over his ADA claim.

> "[W]hen considering the number of violations alleged by Plaintiff, the total amount of damages available to him under the Unruh Act—a minimum of $4,000 for each offense—indicates that Plaintiff's predominant focus is recovering monetary damages under state law. At a minimum, Plaintiff alleges the following nine individual violations: (1) the raised threshold at the entrance door is greater than the permitted threshold for the type of door; (2) the entrance is inaccessible to Plaintiff; (3) parking is inaccessible to Plaintiff; (4) there are no parking spaces designed and reserved for persons with disabilities; (5) there is no lowered portion of transaction counters for persons in wheelchairs; (6) the restroom doorway clear passage is inaccessible to Plaintiff; (7) the restroom does not have grab bars for use by persons with disabilities; (8) the sink lacks knee clearance for wheelchair use; and (9) the restroom mirror is mounted higher than the maximum permitted. (Compl. ¶¶ 13–27.) These nine allegations, if proven, would entitle Plaintiff to a minimum monetary award of $36,000. In contrast, under the ADA, Plaintiff would only be entitled to injunctive relief. Thus, under the circumstances presented, the Court finds that the monetary damages sought by Plaintiff under the Unruh Act substantially predominate over federal injunctive relief. See *Brick Oven Rest.*, 406 F.Supp.2d at 1131 (finding that statutory damages available under the Unruh Act substantially predominated over injunctive relief available under the ADA where the plaintiff alleged distinct violations that, if proven, would entitle him to an award of $56,000); see also *Molski v. Hitching Post I Rest., Inc.*, No. CV 04-1077SVWRNBX, 2005 WL 3952248, at *7 (C.D. Cal. May 25, 2005) (finding that statutory damages available under the Unruh

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Act substantially predominated over injunctive relief available under the ADA where the plaintiff alleged 13 allegations that, if proven, would entitle plaintiff to an award of $52,000)." *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1029-1030 (S.D. Cal. 2017)

In the Complaint in this case, Plaintiff not only wants $8,000 for each of the almost half a dozen "violations" he lists, plus attorney's fees and costs, but he also states his plan to investigate the entire Shopping Center for additional "violations" to attempt to add to his bounty.

Plaintiff wants the substantial monetary rewards of the California Unruh Act but he doesn't want to submit to the heightened pleading standards and increased fees required under California law for a high-frequency litigant like himself.

Defendant contends that Plaintiff only tacked the ADA claim on to his Complaint to get into federal court and evade California requirements.

Pursuant to 28 U.S.C. 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction".

The Court should decline to exercise its supplemental jurisdiction over Plaintiff's Unruh Act claim and dismiss that claim from the Complaint.

/ / /

/ / /

18

## VIII.  Conclusion

For the reasons given above, the Court should decline to exercise its supplemental jurisdiction over Plaintiff's Unruh Act claim and dismiss that claim from the Complaint.

Dated: October 31, 2019                    Respectfully submitted,

                                           BUCKNER, ROBINSON  & MIRKOVICH


                                           By: _____
                                               CATHERINE J. WEINBERG
                                               Attorneys for Defendant Lakeview
                                               Village Corp.